## THE RHEOLA.

### COUGHLIN v. THE RHEOLA and another.

*(Circuit Court, S. D. New York. April 12, 1884.)*

NEGLIGENCE—PRIVITY OF CONTRACT—RESPONSIBILITY.

> A stevedore employed by another, who has contracted to unload a vessel, can recover for injuries sustained by the defective appliances furnished him by the vessel, upon the same evidence which would enable his employer to recover. Though there is no privity of contract between the ship-owners and him, they were under the same obligation to him as they were to his employer. What would be negligence to one would be negligence to the other.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libelant.

*W. W. Goodrich,* for claimants.

WALLACE, J. The libelant has appealed from a decree of the district court for the Southern district of New York dismissing the libel. The suit is *in rem,* and is brought to recover for personal injuries sustained by the libelant while unloading the Rheola, in July, 1879, when she was discharging cargo along-side a pier in the port of New York. The libelant was one of a number of laborers employed by one Hogan, a master stevedore, to discharge cargo, which consisted of tin in cases and iron ore in bulk. He and others, in all a gang of six men, were in the lower hold of the ship, filling the hoisting tubs with iron. He had hooked one of the tubs to the chain, and was in the act of filling another, when the chain broke while the tub was suspended over the hatchway, and the tub fell upon him. Three tubs were being used, and the work was done rapidly. The chain and hoisting apparatus were furnished by the steamer, under the bargain with the stevedore.

It is not suggested that the suit is not properly brought *in rem*, if the master, while acting within the scope of the authority conferred upon him by the owners, in the management of the vessel, was guilty of negligence towards the libelant. Negligence, when committed upon navigable waters, is a maritime tort which subjects the vessel to liability to an extent coincident with the liability of the owner. *Com'rs* v. *Lucas*, 93 U. S. 108. If the relations of the master of the steamer towards the libelant were such as to create a duty not to be negligent, the latter is entitled to recover if there was a breach of that duty. *Sherlock* v. *Alling*, 93 U. S. 99.

The learned judge in the court below was of the opinion that, as there was no privity of contract between the libelant and the owners of the steamer, they were not liable unless the thing by which he was injured was imminently dangerous; but he was also of opinion that if the degree of negligence which would make an employer liable to his employe were enough, such negligence was not established by the proofs. As the libelant was not directly employed by the master, and could only look to the master stevedore for his pay, there was no privity of contract between him and the ship-owners. Nor did the relation of master and servant, in its technical sense, exist between the libelant and the ship-owner. But it is conceived that this does not in the least affect the obligation of the master not to be negligent towards the libelant, or the degree of care which it was incumbent upon him to exercise. The libelant was performing a service in which the ship-owners had an interest, and which they contemplated would be performed by the use of appliances which they had agreed to provide. They were under the same obligation to him not to expose him to unnecessary danger, that they were under to the master stevedore, his employer. There was no express contract obligation on their part to either to provide safe and suitable appliances, but they were under an implied duty to each; and the measure of the duty towards each was the same. What would be negligence towards one would be towards the other. *Coughtry* v. *Globe Co.* 56 N. Y. 124; *Mulchey* v. *Methodist Society*, 125 Mass. 487. The implied obligation on the part of one who is to provide machinery or means by which a given service is to be performed by another, is to use proper care and diligence to see that such instrumentalities are safe and suitable for the purpose. "It is the duty of an employer inviting employes to use his structures and machinery, to use proper care and diligence to make such structures and machinery fit for use." Whart. Neg. § 211. If he knows, or by the use of due care might have known, that they were insufficient, he fails in his duty. This doctrine is cited with approval in *Hough* v. *Ry. Co.* 100 U. S. 220. Due care or ordinary care implies the use of such vigilance as is proportional to the danger to be avoided, judged by the standard of common prudence and experience. Applying this test here, where, if the appliances to be used were defective, serious casualties were to be apprehended, it

was the duty of the master of the steamer to exercise a corresponding vigilance to provide against them.

The proofs show that the average weight of the tubs which were being hoisted out of the hold was about 1,800 pounds; that on the day before one of the chains of the steamer, which was being used in the same work, broke; that both of these chains had been in use about two years; that the one that broke first had been used more than the other; and that such chains, when in proper condition, were sufficiently strong to sustain a hoisting weight of six or seven tons. Concededly the chain was defective, as it broke with a weight of 1,800 pounds, after it had only been used to hoist four or five tubs. It was rusted, and considerably worn in appearance. The breaking of the other chain was a circumstance to attract attention, and put the master of the steamer on inquiry. Under these circumstances it must be held that the casual examination of the chain which was given to it while it was being brought from the other hatch was not sufficient to exonerate the master from the charge of negligence. Before he permitted it to be employed in a use which was so hazardous to those who were to use it, he should have made a careful and thorough test or examination. Anything less than this was a failure to observe proper care.

The proofs do not justify the inference that the libelant was negligent. If he had had any reason to anticipate the accident he could undoubtedly have escaped; but this may be said in almost every conceivable case where an accident has happened. It was not indispensable for him to remain exposed under the hatchway while actually filling the tubs, but part of the time he and the other laborers were necessarily there, because they had to unhook the empty tubs, hook on the full ones, and steady them until they were hauled out of the hold. The work was being done with great dispatch; there were six men doing it, and a limited place in which to do it; the tubs, while being filled, stood near the hatchway and part of the time under it; and under all the circumstances it would seem that the libelant was as careful as in the hurry and excitement of the occasion could be reasonably expected of him, and should not be deemed in fault.

The proofs show that while the libelant sustained painful injuries they were not of a permanent character, nor did they incapacitate him long from doing his ordinary work. A decree for $750 will be a fair compensation to him, and is accordingly ordered.