### THE DRUMMOND (two cases).

(District Court, E. D. Pennsylvania. April 14, 1902.)

INJURY TO STEVEDORE—DEFECTIVE CHAIN—INSPECTION.

A chain used for unloading a ship, and which broke, injuring a stevedore, while a load weighing a ton was being raised, its capacity in good condition being from three to four tons, and which had been used for several years, without needing repair, except that shortly before a link broke and was replaced with a new one, was inspected, so as to relieve the ship from negligence; two of the ship's officers having, just before it was used, examined it link by link, and the break being at the side of a link, and due to imperfect welding, and the defect not being discoverable without the application of strain by a testing machine, or the use of acid and a microscope, which was not required by the facts known about the chain.

John Cadwalader and Charles Sinkler, for libelant Gallagher.
Francis C. Adler and John L. Lewis, for libelant McCormick.
Henry R. Edmunds and N. Dubois Miller, for The Drummond.

J. B. McPHERSON, District Judge. These two actions grow out of the same accident and need not be considered separately. The libelants were stevedores, and on August 8, 1901, were helping to unload a

cargo of iron ore from the steamship Drummond, then lying in the port of Philadelphia. They were at work in the hold; their duty being to fill the iron buckets that were successively lowered at the end of a chain that was rigged in the usual way. About eight hours after they had gone to work, the chain broke about 50 feet from the bucket, and fell through the hatch into the hold, striking the libelants and doing the injuries of which they complain. The chain was large and strong, eleven-sixteenths of an inch in diameter, and had been in use upon the ship for several years without needing repairs, except upon one occasion shortly before the accident now being considered. Upon that occasion also a link broke, but a new link was at once substituted, and the present break was at a different place. The link now in question was slightly worn at each end; but the break occurred, not at the end, but at the side,—there being first a jagged break upon one side, and then a clean fracture upon the other. The load that the chain was carrying was about a ton; but there is no doubt that the capacity of such a chain in good condition is from three to four tons, so that the load under which it broke was clearly not excessive under ordinary circumstances. I think the break was due to imperfect welding. So it was testified by several witnesses, and I accept this explanation as the most likely. The ship, which furnished and rigged the chain, is claimed to have been negligent in using an insufficient appliance, and in failing to properly inspect it before it was put up. I am clearly of opinion that the testimony does not sustain this charge. Before the chain was rigged to the winch, it was laid out upon the deck, and was examined link by link by two of the ship's officers. It was afterwards gone over again by a seaman, who was ordered to grease it, and it therefore passed through the hands and under the eyes of three persons, two of whom examined it with care, link by link, for the express purpose of discovering whether it was fit for use. This, I think, was all that could be required of the ship under the circumstances. No other test was called for. The former break had been repaired, and the chain had done its work satisfactorily since that time. Moreover, I am satisfied that, if there was any external imperfection in the link at the point where it afterwards broke, the defect could not have been discovered without the application of strain by a testing machine, or the use of acids and a microscope. Such an examination was not required by the facts that were known about the chain, and I therefore think that the full duty of the ship was performed by the inspection that I have described. As there was no negligence on the part of the ship, it follows that the injury done to the libelants was the result of an unavoidable accident, which is much to be regretted, but gives them no right to shift the consequences to other shoulders than their own.

In each case the libel will be dismissed, but without costs.