## JOHNSTON v. TURNBULL.

### (District Court, E. D. Pennsylvania. July 15, 1903.)

### No. 42.

1. ADMIRALTY—INJURIES TO STEVEDORE—DEFECTIVE APPLIANCES—NEGLIGENCE.
    Plaintiff's intestate received injuries, from which he died, while assisting in unloading a vessel, by the breaking of a chain attached to the hoist. The chain was $9/16$ of an inch in size, the breaking strength of which was about 10 tons. Three months prior to the accident the chain had been used in lifting tubs of phosphate weighing about 1,200 pounds, and at no time was there any reason to suspect its weakness. Two days before the vessel reached port the chain was used to lift an anchor weighing 2½ tons, and after the vessel reached the dock was properly greased and inspected, link by link, without any defect being found. The chain broke while lifting an iron bucket of ore weighing from 2,000 to 2,500 pounds; and, while two experts testified that the crack in the link could have been seen by a careful observer, and that the chain was incapable

of lifting more than 300 pounds, their evidence was disputed by the physical facts. *Held*, that the evidence was insufficient to establish negligence on the part of the owner of the vessel.

In Admiralty.

Joseph H. Brinton, William J. Conlen, and Jasper Yeates Brinton, for libelant.

Convers & Kirlin, for respondent.

J. B. McPHERSON, District Judge. The libelant is the widow of a stevedore who was killed on July 26, 1902, while helping to unload a cargo of iron ore from one of the holds of the steamship Fairmead. The ore was lifted out in large iron buckets, weighing when full about 2,000 or 2,500 pounds, attached to a chain fall that was operated by a winch in the usual way. Upon this occasion the chain had been in use for more than two days, when it suddenly broke while a full bucket was being hoisted, precipitating the bucket and its contents into the hold, and so injuring the decedent that he died within a few hours. The respondent is said to have been negligent in failing to inspect the chain properly; and, as no other breach of duty is alleged, this point alone needs to be examined upon this branch of the case. A careful consideration of the testimony has satisfied me that the charge of negligence cannot be sustained. Undoubtedly, the cause of the break was a defective weld in the chain, as is now apparent from inspection of the broken link; but I think it is by no means clear that the defect could have been detected either by the eye or by the touch. Two expert witnesses have testified in behalf of the libelant that a crack must have been present, and could have been seen by a careful observer; but I do not think it would be safe to rely on these inferences, in the face of the positive testimony concerning the examination of the chain and the test to which it was subjected after the examination was finished. Two witnesses swear—and I see no reason to doubt their truthfulness and their accuracy—that they both examined the chain, link by link, two days before reaching port; that it was then used to lift an anchor weighing $2\frac{1}{2}$ tons from the forward well-deck to the forecastle head, and, after the vessel reached the dock, was properly greased before it was employed in the work of discharging the cargo. Three months before the accident it had been used at a Georgia port lifting tubs of phosphate weighing about 1,200 pounds, and at no time, so far as appears, was there any reason to suspect its weakness. The size of the chain was $9/16$ of an inch, and the breaking strain of a link as large as this is about 10 tons. One of the experts for the libelant testified that, owing to the crack, which he declares must have been present, the link could not have withstood a strain of more than 300 pounds; but the accuracy of this opinion is much discredited by the facts that the chain had actually lifted 1,200 pounds repeatedly three months before, had lifted an anchor weighing 5,000 pounds just before reaching port, and had been hoisting an average of 2,000 pounds for two days immediately before the break finally came.

On the whole case, I cannot avoid the conclusion that the charge of careless inspection has not been made out. The testimony does

not establish to my satisfaction that the defective weld could have been seen, or otherwise detected, by careful examination, and I am of opinion that the ship's officers fulfilled their duty in this respect. They certainly were not put upon notice that this chain might break under a strain of 2,000 or 2,500 pounds, when the breaking strain of a chain of that size is about four times as much, and when this particular chain, after a scrutiny that had failed to find a flaw, had actually lifted two tons and a half only a few days before.

There being no sufficient evidence of the respondent's negligence, the libel must be dismissed.