### THE NORTHTOWN.

(District Court, E. D. New York. July 16, 1903.)

1. DEFECTIVE SHIP—PERSONAL INJURY—NEGLIGENCE.

Libelant was injured by the fall of a boom of the steamer from the breaking of the iron goose-neck, by which the boom was fastened to the mast. The ship was but a year old, and the iron was large, heavy, galvanized, and painted, and would have supported a weight of 150 tons had not the material been defective. There was at the time no additional weight on the boom, and the iron had been inspected the day before, and thereafter used for lifting without any accident. The broken faces of the iron gave no appearance of previous break or crack, but showed internal fault in the iron, not discoverable by exterior examination. *Held*, that the ship was not chargeable with negligence.

George C. Bodine, for libelant.
Convers & Kirlin, for claimant.

THOMAS, District Judge. The libelant was injured seriously by the fall of a boom on the steamship. The lower end of the boom was fastened to the mast by an iron goose-neck, whose forked end was attached to the boom, while its other end, terminating in an eye, was fitted into the jaws of a spindle, through which an iron pin was passed. The boom had been used shortly before the fall for lifting some comparatively light drafts of cargo, whereupon, in order to reeve a new fall, the boom was lowered to the deck. After the fall had been rove, the boom was raised to an angle of about 45 degrees, when the eye of the goose-neck broke, permitting the boom to fall to the deck, on which it slid in such a way as to produce the injury to the libelant, who was acting as winchman. The accident happened

on February 12, 1902. The vessel was new in April, 1901. The goose-neck was of sufficient size, made of the proper kind of iron, and, if there were no defect in the material, should have supported a weight of 250,000 pounds. No substantial strain came upon the goose-neck at the points of breakage. In originally providing the goose-neck, the shipowner performed the whole duty required by law, and the sole question is whether suitable and proper care was observed in maintaining it, and in the inspection necessary therefor. Although there is some evidence that there were indications of rust on the broken faces of the eye, the evidence preponderatingly shows that such faces were bright, but that the iron at the places of breakage had latent defects, which were incapable of detection by means of ordinary and usual methods of inspection. Mr. McLane, who was an expert in such matters, and had at one time been in the employ of the persons who built the ship, stated that the chemical makeup of the iron often affects its brittleness in cold weather, and that if the iron contained too much phosphorus it might break under the influence of moderate cold, and that the only way in which it could be discovered was by chemical examination. The weather report shows that the mean temperature on the date of the accident, February 12th, was 24 degrees; on February 11th, 20 degrees; on the 10th, 24 degrees; and on the 9th, 29 degrees, above zero. The day before the accident, Mr. White, the first mate of the Northtown, shifted the boom from another mast to the mast where the accident happened, and at that time made an examination of it in its new position. The boom was used for lifting some heavy pieces of pitch pine. This examination was with the eye alone, and his evidence is that no exterior defect was at the time visible. There was no inspection on the day of the accident, and, as substantially no strain was brought upon the eye at the places of breakage, the examination of the previous day should be regarded as practically sufficient, although it is probable that no exterior inspection would have discovered the defect. The burden of proof is upon the libelant. If the fall of the boom raises a presumption of negligence, yet a large and heavy galvanized and painted goose-neck, part of the original construction of a fine ship, new in the previous year, was inspected the day before the accident; it was thereafter used for drafts without accident; its eye broke on both sides, without any additional weight upon the boom, and the broken faces gave no appearance of previous break or crack, but did show internal fault in the iron, not discoverable by exterior examination. It is considered that however lamentable the accident, the master performed the duty required by law. The libel will be dismissed.