### FILL v. CUNARD S. S. CO., Limited.

#### (District Court, S. D. New York.)

1. SHIPPING (§ 84*)—LIABILITY OF VESSELS—INJURY TO STEVEDORE.

It is the duty of a steamship company to provide reasonable safeguards and protection against injury to those on a coal barge alongside engaged in filling the ship's bins pursuant to orders of her captain, and the company is liable to such a person, who was injured by a sudden jet of steam and hot water allowed to escape from the vessel's exhaust without warning.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 342, 349–351; Dec. Dig. § 84.*]

**2.** SHIPPING (§ 86\*)—LIABILITY OF VESSEL—SUIT FOR INJURY TO STEVEDORE.

In such case the person injured had a right to rely on the performance of their duty by those in charge of the vessel, and is not required to prove the reason for discharging the steam and water at the time; but the doctrine of res ipsa loquitur applies, and the burden of proof rests on the vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 343, 353–360; Dec. Dig. § 86.\*]

**3.** ADMIRALTY (§ 34\*)—LACHES—SUIT FOR PERSONAL INJURY.

A suit against a steamship company for a personal injury *held* not barred by laches, where a prior action at law was dismissed for want of jurisdiction, and other causes beyond libelant's control also contributed to the delay.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 316–321; Dec. Dig. § 34.\*]

In Admiralty. Suit by William Fill against the Cunard Steamship Company, Limited. Decree for libelant.

William H. L. Lee, of New York City (Alexander Cameron, of New York City, of counsel), for libelant.

Lord, Day & Lord, of New York City (Howard Mansfield, of New York City, of counsel), for respondent.

HAZEL, District Judge. Libel in personam against the Cunard Steamship Company, Limited, to recover for personal injuries sustained by the libelant at about 8 o'clock in the forenoon of November 8, 1908, while he was engaged in coiling rope on the barge Hersimus preparatory to making her fast alongside the steamer Slavonia, which was moored to her dock at Pier No. 52, North River, for the purpose of supplying her with coal, when suddenly, without notice to him, the steamer ejected steam and hot water from the exhaust or outlet at her side, scalding him and inflicting serious injuries and suffering.

[1] In loading large steamers after they are moored in their berths, it is customary to place alongside them coal barges provided with hoisting appliances from which the coal is hoisted or conveyed to the bins of the steamer. The order for shifting and placing the coal barge Hersimus alongside the Slavonia was given by the harbor master of the claimant upon receiving orders from Captain Roberts of the respondent company. In these circumstances the respondent must be deemed to have had notice of the proximity of the barge in question and of libelant's efforts to fasten her alongside the steamer. While thus engaged the libelant had the right to assume that the steamer would not eject steam or hot water to his injury.

[2] I think there can be no question but that the rule of res ipsa loquitur has application to the facts under discussion; indeed, the law is well settled that the owners of vessels owe a personal duty to stevedores who are engaged in loading or unloading to provide reasonable safeguards and protection against injuries, and also to warn them of any latent dangers caused by the vessel or those in charge of her navigation. The Chicago (D. C.) 156 Fed. 374; The Rheola (C. C.) 19 Fed. 926. It was accordingly the duty of the claimant to exercise or-

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dinary care to save the libelant harmless from injury while he was engaged in making fast alongside in his preparation for loading coal aboard the steamer. Libelant was not required to prove affirmatively the immediate reason for the ejection of the steam or hot water; nor was he, as contended, required to look out for the discharge of steam or hot water from the steamer's outlets, but, on the contrary, the burden rested upon the respondent, irrespective of any custom, either to protect the steam and hot water outlets of the steamer while she was moored to her dock or to have a lookout to give warning of her intentions.

[3] The defense principally urged is that the libelant has barred himself by his laches from recovery in this proceeding, but I think it is sufficiently shown that the asserted delay was not of an inexcusable character. There is no fixed limitation of time for bringing an action in admiralty, and while it may be conceded that staleness of a right of action will not be ignored by the court in a proper case, and that the policy of the court is to adapt itself by analogy to the common-law period of limitation for bringing an action, yet in the present case I am satisfied by the evidence that the circumstances—namely, the earlier action at common law brought by libelant to recover damages for the injuries sustained, the subsequent dismissal of the complaint because of lack of jurisdiction arising from the absence of evidence to show diversity of citizenship, the delay in his efforts to induce a settlement of the claim, and the customary delay before hearing in this court—require me to hold that there have been no such laches on the part of libelant as to defeat recovery.

The proofs do not warrant holding that the libelant was negligent. He could have escaped the injury if there had been reason to anticipate it, but there was no one to warn him of his danger while he was engaged alongside the steamer preparing to unload the coal. He sustained painful injuries of a lasting character, although the defendant denies that libelant's present condition is wholly attributable to the scalding. The libelant was confined to his bed for four months and was unable to leave his home for upwards of a year. The scalding extended over the lower portion of his body, and it is shown that his leg became infected, resulting in erysipelas and paralysis, and continued incapacity to work. He is still unable to work, and it is doubtful if he will ever be able to engage in work with which he is familiar. He has difficulty in walking and in raising his arms, and his speech is impaired. Two reputable physicians have testified for libelant that the erysipelas and paralysis were the direct result of the scalding and burns, and, although this is disputed, I am nevertheless inclined to the opinion that it is fairly shown by preponderating evidence that his unfortunate condition is due to the injuries received in the manner hereinbefore stated, owing to the negligence and want of foresight of the respondent.

Taking into consideration the amount of money expended by libelant for medicine and medical attendance, the loss of wages at $45 per month since the receipt of the injuries, the permanence of his

injuries, his pain and sufferings, and the fact that he has reached the age of 63, I think that the sum of $5,871 would not be excessive, and a decree for that amount may be entered, with costs.