## THE BEECHDENE.

### (District Court, D. Maryland. January 6, 1899.)

1. SHIPPING—LIABILITY OF SHIP—INJURY OF STEVEDORE.

A ship is not liable for an injury to a stevedore's employé while helping to discharge cargo from the hold, caused by the sliding down upon him of bags of sugar piled next to the cargo which was being taken out, where the only negligence shown or charged was that one of the bags of sugar had been laid athwart ships, instead of fore and aft, by the stevedores who had loaded it, which might have caused the pile to fall, which fact was not shown to have been known to any of the ship's officers.

2. SAME—IMPROPER STOWAGE.

The duty of guarding or warning the men engaged in discharging a ship against danger caused by improper stowage, in matters of detail, is that of the contracting stevedores, rather than of the officers of the ship.

In Admiralty. Action by a stevedore for a personal injury.

John A. Toomey and Robert H. Smith, for libelant.

Convers & Kirlin and George Whitefield Betts, Jr., for respondent.

MORRIS, District Judge (orally). The case for the libelant is that he was employed by a firm of stevedores to assist in discharging a shipment of cement which had arrived at Philadelphia from Hamburg on the steamship Beechdene. The cement was stowed under hatch No. 4, and extended across the ship; being placed against the bulkhead forward, and next to a shipment of sugar in bags aft, and separated from the sugar by dunnage of boards. The gang of stevedores started to take out the cement about 2 o'clock, and, working rapidly, had discharged nearly to the bottom tiers by 6 o'clock, when the accident occurred. The removal of the cement left a vacant space across the ship about 20 feet in depth between the bulkhead forward and the perpendicular tiers of bags of sugar aft. Unexpectedly to the stevedores who were working on the bottom of this opening, and without warning, the bags of sugar on the port side suddenly slid forward and down on the libelant, and injured him. The negligence charged against the ship is that the cargo of sugar was not safely stowed, and secured so as to prevent it from falling when the cement was removed.

In this case, as in all like cases in which the libelant seeks to recover for injuries sustained while in the employment of the ship, the burden lies upon him to show the neglect of some positive duty which was owing to him by the shipowners from whom he seeks to recover.

It is to be noticed in this case, in the first place, that the negligence alleged is negligence in stowing the cargo, by reason whereof the libelant, who was employed in discharging the cargo, met with this lamentable injury. Cargo is stowed with reference to its safe carriage, and the necessity to make it safe for that purpose is the controlling consideration, and not the safety of those who may be employed at the end of the voyage to discharge it. Who are the persons most familiar and experienced in the dangers which attend the business of unloading cargoes? Obviously, the stevedores, and not the officers of the ship. It is true that, if the officers of a ship direct a certain thing to be done in a certain way, they are held responsible if they negligently send the person employed by the ship into a place of danger, the danger of which could be obviated by reasonable care on the part of the officers of the ship. But this does not seem to be such a case. The unloading of the cement was delegated to professional stevedores. The officers of the ship did nothing in the way of directing them as to how the cement was to be taken out, or as to what precaution should be observed to protect those doing it from injury. The stevedores are presumed to know how to do it, and what are the reasonable precautions which must be taken to make it safe to pursue their occupation.

I throw out entirely, in the consideration of this case, the testimony of the master with regard to the special warning which he testifies that he gave to the gang of stevedores who were at work where this accident happened; warning them that the cement, while being hoisted out, was striking against the upper tiers of bags of sugar, injuring the bags and loosening them. I throw that out, because, as has been suggested, the testimony of the captain was taken a good while after the occurrence. It is obvious that he had not then very

distinct recollection of these matters, and I would not base a judgment in this case on the accuracy of his recollection; not intending to impute conscious misstatement to him. I rest my conclusion upon the statements of the stevedores themselves. They were discharging the cement in the manner they thought proper. It would seem that the only possible ground upon which any liability could be imputed to the ship is that there was a danger which these men at work there could not see, and which resulted from an improper stowage of the cargo, viz., in this: that there was one bag, out of a very great number, which was laid athwart ships, instead of fore and aft.

With regard to this alleged fault in stowage, two things suggest themselves to my mind: One is whether in fact it was this bag stowed athwart ships which caused this accident. I think that matter is left in great uncertainty by the testimony for the plaintiff. If that is to be the ground of judgment against the ship, it ought to be proved to the satisfaction of the court; and, at most, it seems to me it was only a suspicion which is raised that it may possibly have been the cause of this falling down of the tiers. Nobody saw this bag moved, and the upper tiers thereupon slide down and overwhelm this man. Upon rescuing him from under the falling bags, it is testified by some of these witnesses that they discovered there a bag which was placed athwart ships, and not fore and aft; and some of them say they have concluded—not from anything definite with regard to its position, but from the idea that there is danger in piling up a tier with one bag so placed—that it may have been this bag which caused the accident. But at most, the result, to my mind, is that it is not proved, but that there is suggested a mere possibility that it may have been the placing of that bag which caused the upper tiers of bags to come down.

The other point on which I am not clear is whether, in the stowage of a cargo of that kind, the placing of a bag of sugar athwart ships would be such an act of negligence that the shipowners could be held liable for the consequences of it. It might possibly be said to be an act of unskillfulness in the stevedore who placed the cargo aboard in Hamburg, but it is not reasonable to exact that the officers of the ship shall superintend the lading to the extent that they could be able to guaranty to any one that comes to work on board in discharging the cargo that there is not a single bag of sugar which was placed a-burton, as it is called. That is a matter of detail in loading which is left to the stevedore, and it seems to me to be carrying the doctrine of the answerability of owners to those who come aboard the ship to an extreme to say that because of an act done in Hamburg by stevedores, such as the misplacing of a single bag in the bottom of the ship, therefore the owners of the ship are liable to persons who come aboard to work in getting out the cargo for injury resulting from that misplaced bag. It seems to me that, in all the reported cases in which the ship has been held liable to stevedores and others who have been injured while in the employ of the ship, it has been where some part of the business of the officers or crew has been done in an improper manner —where some duty which devolved upon the owners or the officers or crew has been neglected—and not where the injury resulted from acts done by others, of a distinct and separate employment, which it would

be almost impossible could come to the knowledge of the owners of the ship or the officers of the ship.

If the misplacing of the bag is not the ground of recovery, then it must be that the officers of the ship owed it as a duty to the stevedores to be present during the discharging of the cargo, watching to see how the stevedores worked, and so as to warn them of any danger that might be impending; to see if these bags had worked forward and were overhanging; and personally to superintend the operations of the stevedores, and be there to protect them against anything that might happen in the course of their work from the result of their own method of working. That has not been contended for, and I do not think there is any ground for such contention. It would seem, on the contrary, that where work of this kind is going on—where stevedores are taking out cement, and leaving high tiers of bags of sugar exposed, and where, as they took out the cement, they took away the dunnage which was keeping the tiers of bags in place—there should be a foreman of the stevedores overlooking the work, to give warning of danger, such as the overhanging of upper tiers, or, as is contended in this case, danger from improper piling of the bags. If there appeared to be danger arising from either of these causes, it would seem proper that somebody representing the head stevedore should be there to give warning of it. It is true, as the stevedores themselves said, they are too busy preparing the draughts to be hoisted up to give much attention to such dangers; but it seems to me that duty did not devolve upon the officers of the ship, they having given over the discharging to men who make it a distinct business to discharge vessels.

Upon the whole, I am unable to see that any duty that was owing to this stevedore by the owners of the ship, or to be performed by officers or crew of the ship, was neglected. Libel dismissed.