## PANAMA MAIL STEAMSHIP CO. v. DAVIS.
### No. 5822.

Circuit Court of Appeals, Third Circuit. Sept. 9, 1935.

Howard M. Long and Ralph N. Kellam, both of Philadelphia, Pa., for appellant.

Mortimer W. H. Cox, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

This is a suit in admiralty to recover for personal injuries sustained by the libelant, employed as a stevedore on respondent's vessel the Santa Elisa. The libelant

was employed as a stevedore by a stevedore independent contracting company and was engaged on September 5th in stowing cargo on respondent's vessel. It was bound to Havana and it was necessary for her to obtain fumigation certificates in order that she might put in to that port. The United States Public Health Service furnished its fumigation experts in such cases to fumigate vessels, and on the morning of September 5, 1933, such expert took charge of the vessel and ordered every one to leave. While fumigation was going on, the vessel was in absolute control of such expert. The proofs show the government men fumigated the vessel with hydrocyanic acid—which is a deadly poison—mixed with what is commonly known as tear gas, to warn every one of the presence of the hydrocyanide. After the vessel was fumigated and the hatches opened to allow the gas to be blown away, the government expert inspected the vessel at least three times to determine whether or not it was safe. The officer in charge of the fumigation made the final inspection at about 1 o'clock and found the ship clear of gas. There is no question but that he was qualified to make such examination. He then turned the control of the vessel back to the ship's officers, and they ordered the stevedores to begin loading. The libelant was sent into the forward lower hold, and, after working there a few minutes, complained of dizziness and nausea and collapsed. He was taken to a hospital and remained there as a patient, being diagnosed as suffering from hydrocyanidic poisoning, for four days, when he was discharged in apparent good health. There is medical testimony that thereafter he suffered from the effects of the poison for several months.

In the District Court the trial judge held that the respondent owed the libelant the duty of providing a safe place in which to work and to exercise ordinary and reasonable care to keep the premises fairly safe and secure against danger. Both parties agree that this is a correct statement of the law. But the judge further held the respondent could not escape its duty to the libelant by relying upon the fumigation made by the government expert.

We are of opinion the trial judge, after stating the correct rule of law that the ship owed the libelant a reasonably safe place in which to work, failed to apply the rule correctly. The respondent was required by the rules of the port of Havana to obtain the services of the government's expert to fumigate the ship. The federal officers assumed complete control of the vessel and did not return it to the respondent until they were convinced that the ship was safe. They were experts, and the officer in charge of the fumigation had fumigated over 1,500 ships in the port of Philadelphia without an accident of this sort. It seems, therefore, that the respondent exercised reasonable care and diligence when it relied on the work and word of the government's expert that the ship was safe for loading. The vessel's officers were not qualified to determine whether the ship was safe or not, and why the respondent should be required to have its officers make a futile inspection of the ship after the government men had pronounced it safe and returned it to their control does not appear. It is unfortunate that the libelant cannot collect damages for his injuries, but it does not appear that the respondent can lawfully be charged with the responsibility for them.

The decree below must be reversed.