**WHYATT v. UNITED STATES et al.**

No. 17560.

United States District Court
E. D. New York.

May 24, 1950.

544

J. Vincent Keogh, United States Attorney, Brooklyn, N. Y., Martin J. Norris, Benjamin H. Berman, and Sidney J. Ungar, all of New York City, for libelant.

John P. Smith, New York City, Albert S. Commette, New York City, for respondent, Jarka Corporation.

INCH, Chief Judge.

Libelant sues the Government under the provisions of the Public Vessels Act, 46 U.S.C.A. § 781 et seq., and the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq., for personal injury sustained by him when he was struck by a number of bags of sugar while working as a stevedore aboard the U. S. S. Bayfield, at Pier 34, North River, on August 4, 1943. The ship was owned by the Government which has impleaded libelant's employer, the Jarka Corporation (hereinafter called "Jarka").

■ This employer of libelant had obtained compensation insurance in accordance with the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and libelant has received certain payments thereunder. At an informal conference it was suggested that the case be settled for a lump sum, but before a formal award was made by the Deputy Commissioner, libelant filed an election to sue the Government as a third party. He is, therefore, permitted to bring this suit under the authority of American Stevedores v. Porello, 330 U.S. 446, 67 S. Ct. 847, 91 L.Ed. 1011. Apparently libelant's employer has duly complied with the provisions of the Compensation Act, so that libelant is still entitled to the benefits of his employer's policy.

■ Libelant contends that the Government and Jarka were jointly negligent. He charges the Government with failing to provide him with a safe place to work because the ship's cargo was improperly stowed and because the ship's personnel, having constructive notice of the improper stowage, failed to adequately supervise the discharge of the cargo. He charges his employer Jarka with negligence in that it carelessly and improperly unloaded the cargo. However, in my opinion, libelant has failed to establish any negligence on

the part of the Government, and any remedy which he may have against Jarka must be sought under the exclusive provisions of the Compensation Act. See Porello v. United States, 2 Cir., 153 F.2d 605, modified in 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011; Frusteri v. United States, D.C., 76 F.Supp. 667.

There was some confusion on the part of libelant at the trial as to the position in which the bags were stowed in the hold. I find, as contended by him, that they were stored "athwartship", i. e., with the ends of the bags toward the sides of the ship. However, the preponderance of credible expert testimony clearly favors a finding that loading bags of sugar in this position is a safe, proper and customary method of stowage. There is no evidence that the bags were loosely packed, or that they were not piled in straight tiers. In fact, libelant's partner Barrow, in a written statement dated April 26, 1946 (U.S. Ex. 1) stated: "The tiers seemed to be stacked properly and were not off balance". At the trial he further testified that the bags were stacked "tight". Negligence on the part of the Government cannot, therefore, be predicated on the manner in which this sugar cargo was stowed.

As to the claim that the Government failed to properly supervise the unloading, it is abundantly clear that the ship's personnel, at least a day before the accident occurred, had surrendered complete control of the hold to Jarka for the purpose of unloading the sugar cargo. There is no proof that the ship's crew was in any way engaged in the discharge of the cargo or that they performed any act, or supplied any equipment which contributed to the accident. The proof is plain that Jarka's employees took control of the hold from the time the hatches were opened and that they retained such control up to and including the time libelant was injured. As I have already stated, no unsafe condition existed in the hold at the time Jarka so assumed control, and the Government is not responsible for any unsafe condition which may thereafter have been created by the stevedores in discharging the cargo.

Grasso v. Lorentzen, 2 Cir., 149 F.2d 127, certiorari denied 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444; Lauro v. United States, 2 Cir., 162 F.2d 32; Belos (Gonzales' Case), 1939 AMC 324; The Beechdene, D.C., 121 F. 593.

The libel is dismissed against the United States of America with costs, and the libel and impleading petition against the Jarka Corporation is dismissed, without costs.

Findings of fact and conclusions of law are being filed herewith.

Settle decree on notice.

Findings of Fact

1. Libelant was employed by The Jarka Corporation, respondent-impleaded, as a member of a gang of longshoremen to discharge a cargo of sugar from the U. S. S. Bayfield on August 4, 1943.

2. The U. S. S. Bayfield was a United States Navy Ship, owned, operated and controlled, except as to cargo operations, by the United States of America, respondent.

3. On August 3rd and 4th, 1943 the U. S. S. Bayfield was tied up at Pier 34, North River, New York, in navigable waters.

4. The Jarka Corporation was a company engaged in stevedoring operations and was under contract to unload the cargo from the U. S. S. Bayfield.

5. In compliance with The Jarka Corporation's agreement with the United States of America, The Jarka Corporation duly secured compensation insurance in accordance with the Longshoremen's and Harbor Workers' Compensation Act.

6. Such insurance was in full force and effect at the time of the accident.

7. The cargo in the hold where the accident occurred consisted of 100-pound bags of granulated sugar stowed in tiers "athwartship", i. e., with the ends of the bags toward the sides of the ship.

8. The cargo of sugar was stowed in the hold in a safe, proper and customary manner.

9. At least one day prior to the date of the accident, the United States of America surrendered control of the hold where libelant was injured to The Jarka Corporation for the purpose of discharging the sugar cargo. At that time no unsafe or unseaworthy condition existed with respect to the ship's cargo, equipment or appurtenances.

10. No member of the ship's personnel participated in the discharge of the cargo from the ship's hold.

11. On August 4, 1943 at about 1:30 P. M. libelant entered the #3 or #5 hold of the U. S. S. Bayfield for the purpose of assisting in discharging the said cargo.

12. At that time the hold where the accident occurred was approximately one-third to one-half discharged.

13. At about 3:30 P. M. when the accident occurred, the stevedores had worked their way down to the bottom of the hold. Libelant was in a crouched position on the floor of the hold assisting his partner, Barrow, in placing a bag of sugar into a canvass sling, when he was struck by a series of falling bags of sugar. These bags fell from a pile or tier of about fifteen bags which had not yet been touched or "broken out" by the stevedores.

14. Libelant applied for and received certain compensation benefits under the Longshoremen's and Harbor Workers' Compensation Act as a result of the injuries sustained in the accident, but no formal award was made by the Deputy Commissioner.

### Conclusions of Law

1. Libelant's injuries were not due to any unseaworthiness of the U. S. S. Bayfield at the time the Government surrendered control to the Jarka Corporation, or to any negligence of the ship's personnel.

2. The libel against the United States of America must be dismissed for failure to prove negligence on the part of the Government.

3. The Jarka Corporation's liability to libelant, if any, is under the provisions of the Longshoremen's and Harbor Workers' Compensation Act.

4. The Jarka Corporation, having provided the requisite compensation insurance, is not liable herein.

5. The libel is dismissed against the United States of America with costs.

6. The libel and impleading petition is dismissed against The Jarka Corporation without costs.